IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**James D. Clinton Usher,**

    **Plaintiff,**

v.                                                                                                    Case No. 13-CV-2645

**Merrill Lynch, Pierce, Fenner &**
**Smith Incorporated dba Merrill Lynch**
**Wealth Management; and Rhonda Holleran,**

    **Defendants.**

## MEMORANDUM & ORDER

Plaintiff James Clinton Usher filed this suit against defendant Merrill Lynch, his former employer, asserting claims for disability discrimination, disability harassment and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Additionally, plaintiff has asserted a claim for defamation under Kansas law against Merrill Lynch and against defendant Rhonda Holleran, plaintiff's supervisor during his employment. This matter is presently before the court on defendants' motion to dismiss (doc. 18) plaintiff's defamation claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claim is barred by the statute of limitations. As will be explained, the motion is granted.

Defendants' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiff's complaint, are accepted as true for purposes of defendants' motion. Plaintiff was employed by Merrill Lynch first as a financial advisor and, most recently, as an Administrative Manager in Kansas City. When plaintiff accepted the position of Administrative Manager in Kansas City, defendant Rhonda Holleran became plaintiff's supervisor. According to plaintiff, who was born with spastic diplegia cerebral palsy, Ms. Holleran soon began a campaign of discrimination, harassment and retaliation against plaintiff based on plaintiff's disability and his requests for accommodations in an effort to trigger plaintiff's resignation. Ultimately, defendant Merrill Lynch terminated plaintiff's employment in August 2012 after ten years of employment.

According to plaintiff, the Financial Industry Regulatory Authority (FINRA) requires that employers in the securities industry complete a Form U-5 or Uniform Termination Notice for Securities Industry Registration upon the termination of a licensed professional, describing the reason for an employee's termination. Plaintiff alleges that the Form U-5 is available to the public and is reviewed by potential employers in the securities industry when making hiring decisions. In support of his defamation claim, plaintiff alleges that defendant Merrill Lynch, acting through defendant Rhonda Holleran, branded plaintiff's Form U-5 with negative, untrue reasons for plaintiff's termination and stated on the form that plaintiff's employment was terminated based on "loss of management's confidence resulting from failure to meet performance expectations." Plaintiff alleges that he was unable to secure employment for 8

months after his termination in light of the negative Form U-5 and that defendants' statement on the Form harmed plaintiff's professional reputation.

Defendants move to dismiss this claim on the grounds that it is barred by the applicable statute of limitations. In support of their motion, defendants have submitted a copy of the Form U-5 indicating that defendant Merrill Lynch filed the form on October 2, 2012. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1234 n.1 (10th Cir. 2013) (a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss where the document's authenticity is not in dispute). According to defendants, plaintiff was thus required to file his defamation claim no later than October 2, 2013 pursuant to the one-year statute of limitations. *See* K.S.A. § 60-514(a) (actions for libel or slander must be brought within one year). Plaintiff filed his complaint on December 19, 2013 and defendants contend that this filing was untimely as to plaintiff's defamation claim.

Plaintiff does not dispute that the Form U5 was filed in October 2012 or that the applicable limitations period is one year. Nonetheless, plaintiff contends that defendants' motion must be denied because discovery is required to determine when "republication" of the defamatory statement occurred. According to plaintiff, republication arguably occurred as late as March 2013, when plaintiff applied for new employment and FINRA would have republished the U-5 to plaintiff's prospective employer. Plaintiff's republication argument is based on *Wright v. Bachmurski*, 29 Kan. App. 2d 595 (2001)—a case that is distinguishable from this one. In *Wright*, two individuals told a newspaper reporter that the plaintiff had committed tax evasion. *Id.* at 597-98. The paper then published a story about the plaintiff's tax evasion. *Id.* at 598. The plaintiff settled his claim with the newspaper, but filed and pursued a separate claim

3

for defamation against the two individuals. *Id*. The district court granted summary judgment in favor of the individual defendants on the grounds that they were joint tortfeasors with the newspaper such that the newspaper's release also released the individuals. *Id*. at 599.

The Kansas Court of Appeals reversed the district court, holding that the individuals were independent tortfeasors and that two separate and distinct causes of actions existed against the individuals based on two publications of the defamatory statements:

> The first action arose from the communication between [the individuals] and the reporter for the newspaper (the original publication). The second cause of action resulted from the newspaper's story based on the communication with [the individuals] (republication).

*Id*. at 601. Relying on the Restatement (Second) of Torts, the Court of Appeals explained that each communication of a defamatory statement to a third person constitutes a new publication and when that third person then communicates the defamatory statement to a fourth person, the original publisher may be separately liable for the republication if the repetition by the third person was reasonably expected as the natural and probable consequence of the original publication. *Id*. at 601-02. According to the Court of Appeals, the newspaper republished the defamation by writing a story based on the individuals' defamatory statements to the reporter and the individuals could have reasonably expected the newspaper to write a story as a probable consequence of the defamatory communication between them and the reporter. *Id*.

Plaintiff here contends that each time he applied for new employment and a prospective employer obtained a copy of plaintiff's Form U-5, the defamatory statements therein were "republished" and each republication creates a separate basis for liability against defendants because they could have reasonably expected that prospective employers would obtain a copy of

4

the Form U-5. But unlike the facts of *Wright*, where two separate and distinct publications occurred (the communication with the reporter and then the republication of the article in the newspaper), plaintiff here relies on the subsequent transmittal or distribution of the single Form U-5 that defendants filed in October 2012. In such circumstances, defendants contend that the "single publication rule" applies and precludes liability for any subsequent distribution of the Form U-5. As explained by the Court of Appeals in *Wright*:

> [U]nder the single publication rule any single integrated publication, such as one edition of a newspaper, book, or magazine, or one broadcast, is treated as a unit, giving rise to only one cause of action, even though widely distributed, and regardless of the number of times it is exposed to different people. Under the rule, distinct causes of action do not arise by virtue of the sale of copies of an edition of a newspaper, or by reason of the sale of copies of a book from stock . . . .

*Id*. at 602 (citing *Restatement (Second) of Torts* § 577A). In *Wright*, the court determined that the single publication rule did not apply to the individual defendants because the cause of action against them "did not arise from [the] sale of copies of an edition of a newspaper, magazine, broadcast, or [the] sale of copies of a single book." *Id*.

In the absence of any Kansas case supporting plaintiff's republication theory under analogous facts, the court believes that Kansas courts, if faced with this issue, would conclude that the facts alleged in plaintiff's complaint demonstrate that a single publication of the U-5 occurred in October 2012 and that subsequent transmissions of the Form U-5 do not constitute new publications sufficient to restart the running of the statute of limitations. In discussing the single publication rule, the Kansas Court of Appeals relied in large part on the *Restatement (Second) of Torts* § 577A which explains that if a magazine publishes a defamatory article in one month but receives an order the following month for a large number of copies of the

5

magazine containing the defamatory article, only a "single publication" has occurred. *Restatement (Second) of Torts* § 577A, illustration 6. According to the Restatement, the rule is "justified by the necessity of protecting defendants and the courts from the numerous suits that might be brought for the same words if each person reached by such a large-scale communication could serve as the foundation for a new action." *Id*. comment c. The Restatement also clarifies that the examples given in § 577A (that is, books, newspapers, broadcasts, motion pictures) are not intended in any way as limitations on the single publication rule. *Id.* comment d.

Treating the Form U-5 as a single, integrated unit akin to one edition of a book or newspaper is consistent with both *Wright* and the Restatement; otherwise the statute of limitations would never run so long as the Form U-5 was available for transmittal. *See Kalinowski v. Boeing Co*., 1992 WL 321613, at *2 (D. Kan. 1992) (purported republication of documents in personnel file each time a supervisor reviewed file was insufficient to toll statute of limitations under Kansas law). Relying on Ohio law, the Sixth Circuit has explained that allegedly defamatory statements contained in a Form U-5 are not "republished" each time the form is transmitted to a prospective employer and that NASD's action in sending the form on a date subsequent to the filing of the form does not restart the statute of limitations. *Friedler v. Equitable Life Assurance Society*, 86 Fed. Appx. 50, 55 (6th Cir. 2003). The Sixth Circuit analogized a Form U-5 to any other publication which has already been published but is simply retransmitted to new consumers. *See also Wang v. Prudential Ins. Co*., 439 Fed. 359, 366 (5th Cir. 2011) (defamation claim barred by one-year statute of limitations where Form U-5 was filed in November 2007 and claim was not filed until July 2009); *Wietecha v. Ameritas Life Ins.*

*Corp.*, 2006 WL 2772838, at *4-5 (D. Ariz. Sept. 27, 2006) (plaintiff's claims regarding defamatory statements in U-4 hiring form were barred by statute of limitations in the absence of any allegation that the form was submitted secretly or that he could not have discovered form earlier).

For the foregoing reasons, defendants' motion is granted.[1]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss plaintiff's defamation claim (doc. 18) is **granted** and, because that claim was the only claim asserted against defendant Holleran, **defendant Holleran is dismissed as a party to this action.**

**IT IS SO ORDERED.**

Dated this 2nd day of April, 2014, at Kansas City, Kansas.

                                           s/ John W. Lungstrum
                                           John W. Lungstrum
                                           United States District Judge

---

[1] The court questions the viability of this claim in any event in light of the fact that, under Kansas law, statements made in the context of a Form U-5 are entitled to a qualified privilege such that plaintiff would have to prove that the statements were made with actual malice. *See Moreland v. Perkins, Smart & Boyd*, 44 Kan. App. 2d 628, 638 (2010). Plaintiff has not alleged in his complaint that defendants' U-5 statements were made with actual malice.